UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KNIGHT MPIC VENTURES, LLC, KNIGHT
MPIC VENTURES II, LLC, and KNIGHT
VENTURES III, LLC,

                                  Plaintiffs,

             -against-

KRAIG T. HIGGINSON,

                                  Defendant.
------------------------------------------------------------X

18 Civ. 8126 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Knight MPIC Ventures, LLC, Knight MPIC Ventures II, LLC and Knight MPIC Ventures III, LLC ("Plaintiffs") sue Kraig T. Higginson ("Defendant"), alleging breach of contract. Plaintiffs move for summary judgment against Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking judgment against Defendant in the amount of $3,500,000 plus interest, reasonable costs and attorneys' fees. For the following reasons, Plaintiffs' motion is granted.

## I. BACKGROUND

The following facts are taken from the parties' submissions, and are undisputed. On October 9, 2017, each of the Plaintiffs respectively entered into identical loan and security agreements (the "Loan Agreements") with TW Life I S.à.r.l., TW Life II S.à.r.l. and Baltic Ventures S.à.r.l (collectively, the "Borrowers"). Under the Loan Agreements, Plaintiffs agreed to make certain loans to the Borrowers, which the Borrowers secured with life insurance policies (the "Policies"). In exchange, the Borrowers agreed to repay the balance of the loans, together with accrued interest and certain fees and expenses, including reasonable attorney fees (the "Obligations"). The Loan Agreements provide that, on default, Plaintiffs are entitled "without

further demand, presentation or notice, of any kind" to exercise "all of those rights and remedies provided in this Agreement . . . and any other Transaction Documents."

At the same time, Defendant executed a guaranty agreement (the "Guaranty") with the Borrowers. The Guaranty, a Transaction Document under the Loan Agreements, "absolutely, unconditionally and irrevocably guarantees" that Defendant will pay "all present and future obligations, liabilities and agreements required to be observed" by the Borrowers to Plaintiffs. Dkt 61-3 at § 1.1. It further states that Defendant's personal liability to Plaintiffs could generally not exceed $4,500,000, and that "so long as any part of the unguaranteed portion of [the Borrowers' obligations under the Loan Agreements] remain unpaid, no payment . . . shall be considered in whole or in part to be in satisfaction of the obligations of [Defendant] hereunder." Dkt 61-3 at § 1.4. As part of the Guaranty, Defendant "irrevocably waive[d] any defenses . . . in any way relating to" "[a]ny lack of validity or enforceability of the Obligations or any agreement or instrument relating thereto." Dkt 61-3 at § 2.1.

Additionally, and also concurrently with the Loan Agreements, Defendant and Plaintiffs executed a Stock Pledge Agreement, pursuant to which Defendant pledged to Plaintiffs 200,000 unencumbered shares of privately held common stock of VIA Motors International, Inc. as collateral. Plaintiffs remain in possession of this stock.

The parties agreed that the Borrowers would have until April 15, 2018, to pay the Obligations under the Loan Agreement. The Borrowers failed to do so. On April 19, 2018, Plaintiffs sent demand letters to Defendant and the Borrowers, declaring an Event of Default under the Loan Agreements.

On May 25, 2018, Plaintiffs, Defendant and the Borrowers entered into a Strict Foreclosure and Forbearance Agreement (the "SFFA"). Pursuant to the SFFA, Defendant and

the Borrowers acknowledge the default and that the Borrowers owed Plaintiffs $104,537,111.75 under the Loan Agreements. Per the SFFA, Plaintiffs agree to forbear from exercising certain rights and remedies resulting from the default until the Forbearance Termination Date. *See* Dkt. 61-5 at §§ H & 10(ii).

In a section titled "Strict Foreclosure," the SFFA provides:

> [Plaintiffs] propose, on the date hereof, to accept the [Policies] from the [Borrowers] in partial satisfaction of the Obligations (the "Strict Foreclosure" and the amount of Obligations satisfied thereunder, the "Satisfied Obligations") but excluding that portion of the Obligations consisting of the unpaid principal amount of $3,500,000**.**

Dkt. 61-6 at § 7. This section further states that "each [Borrower] irrevocably consents to and unconditionally accepts [Plaintiffs'] and [Defendant's] acceptance of the [Policies] in satisfaction solely of the Satisfied Obligations . . . and further agrees, [] that the Strict Foreclosure [of the Policies] shall constitute an 'acceptance' of collateral in satisfaction solely of the Satisfied Obligations," Dkt. 61-6 at § 7, and that, "upon the effectiveness of the Strict Foreclosure on [May 25, 2018], [Defendant] shall be liable, pursuant to the [] Guaranty, for that portion of the Obligations consisting of the unpaid principal amount of $3,500,000." Dkt. 61-6 at § 8. Plaintiffs subsequently strictly foreclosed on the Policies.

One of the events triggering the Forbearance Termination Date under the SFFA is the Borrowers' failure to deliver a qualifying SFFA Notice, with which Defendant and the Borrowers could buy back the Policies "at a purchase price not less than the sum of the three unpaid principal loan amounts as of the date of the SFFA," by July 18, 2018. *See* Dkt. 61-6 at §§ 9(iii-v) & 10(ii). On July 18, 2018, Defendant and the Borrowers delivered to Plaintiffs a non-conforming SFFA Notice. The Forbearance Termination Date subsequently passed. No additional money has since been paid to Plaintiffs.

## II. PROCEDURAL HISTORY

On September 6, 2018, Plaintiffs brought this action for breach of contract and unjust enrichment, alleging that the Borrowers failed to pay Plaintiffs money owed, and that Defendant is therefore personally liable, pursuant to the Guaranty and SFFA, for $3,500,000, plus interest, reasonable costs and attorneys' fees. Defendant moved to dismiss on December 12, 2018. On March 7, 2019, Defendant's motion was granted in part, and the unjust enrichment claim dismissed based on Defendant's representation that "the governing contract at issue (the Guaranty) is valid and enforceable."

On April 9, 2019, discovery was stayed, and on April 15, 2019, the Court set a briefing schedule for Plaintiffs' summary judgment motion and ordered Defendant estopped from asserting that the Guaranty is unenforceable.

## III. STANDARD

Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *See id*. at 255.

New York law applies because the Guaranty provides that it is governed by New York law. Federal courts sitting in diversity generally apply the choice-of-law rules of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *accord AHW Inv. P'ship v.*

*Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015), and "New York choice-of-law rules also 'require[ ] the court to honor the parties' choice [of law provision] insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.'" *Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) (alteration in original).

A claim to enforce a guaranty has three elements: that the guaranty is "absolute and unconditional," an underlying debt and the guarantor's failure to perform under the guaranty. *See Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 84-5 (N.Y. 2015) (discussing summary judgment to enforce a guaranty under CPLR 3213 for an action based on an instrument for the payment of money). "A guaranty is a promise to fulfill the obligations of another party, and is subject 'to the ordinary principles of contract construction.'" *Id.* at 85.

Under ordinary principles of contract construction, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.*; *accord Marin v. Constitution Realty, LLC*, 71 N.E.3d 530, 533 (N.Y. 2017) ("[A]greements are construed in accord with the parties' intent. The best evidence of that intent is the parties' writing."). "[A] contract should be 'read as a whole, . . . and if possible it will be so interpreted as to give effect to its general purpose.'" *Marin,* 71 N.E.3d at 534 (alterations in original). "When interpreting a contract, the construction arrived at should give fair meaning to all of the language employed by the parties, to reach a practical interpretation of the parties' expressions so that their reasonable expectations will be realized." *Yarom v. Poliform S.P.A.*, 60 N.Y.S.3d 283, 285 (2d Dep't 2017). "The construction and interpretation of an unambiguous written contract is an issue of law within the province of the court . . . If the language is free from ambiguity, its

5

meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence." *Id*.

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous," *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir. 2000) (construing New York law); *accord In re Motors Liquidation Co.*, 578 F. App'x 43, 44 (2d Cir. 2014) (summary order) (construing New York law), which "'is an issue of law for the courts to decide.'" *Marin*, 71 N.E.3d at 534. "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *Williams v. Town of Carmel*, 106 N.Y.S.3d 333, 335 (2d Dep't 2019) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). "[C]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.,* 869 N.Y.S.2d 511, 517 (1st Dep't 2008), *aff'd*, 920 N.E.2d 359 (N.Y. 2009); *accord JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009). "Summary judgment is appropriate if the terms of the contract are unambiguous." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (construing New York law).

## IV. DISCUSSION

### A. Liability

Plaintiffs move for summary judgment as to Defendant's liability for breach of guaranty. Because there is no genuine dispute of fact as to the "the existence of the [absolute and unconditional] guaranty, the underlying debt and the guarantor's failure to perform under the guaranty," Plaintiffs' motion is granted. *Navarro*, 36 N.E.3d at 84.

### a. Absolute and Unconditional Guaranty

The first element of a claim to enforce a guaranty is the existence of an absolute and unconditional Guaranty. *Navarro*, 36 N.E.3d at 85. The existence of the Guaranty itself is undisputed, and the Guaranty by its unambiguous terms is absolute and unconditional. Defendant personally guaranteed the obligations owed by the Borrowers under the Loan Agreements, and specifically agreed in the Guaranty that his liability is "absolute[], unconditional[] and irrevocabl[e]." Dkt. 61-3 at § 1.1. Defendant further agreed to waive "any defenses" relating to "[a]ny lack of validity or enforceability of the Obligations or any agreement or instrument relating thereto . . .," Dkt. 61-3 at § 2.1; "any right to revoke this Guaranty," Dkt. 61-3 at § 2.5; and "[a]ny other circumstance . . . that might vary the risk of [Defendant] or otherwise operate as a defense available to, or a legal or equitable discharge of, any Borrower or any other guarantor or surety." Dkt. 61-3 at § 2.6. "By its plain terms, in broad, sweeping and unequivocal language, the [G]uaranty forecloses any challenge to the enforceability and validity of the documents which establish [Defendant's] liability for payments arising under the [Loan Agreements]." *Navarro*, 36 N.E.3d at 86 (finding a guaranty absolute and unconditional where it contained similar provisions); *see also 136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12-13 (2d Cir. 2016) (summary order) (same).

### b. Underlying Debt and Failure to Perform

The undisputed evidence shows the existence of the underlying debt and the Borrowers' failure to perform. The parties do not dispute that the Borrowers defaulted under the Loan Agreements and that Defendant had personally guaranteed the Borrowers' payment, up to $4,500,000. The parties also do not dispute that, following the Borrowers' default and pursuant to the Loan Agreements, Plaintiffs were entitled, "without further demand, presentation or

7

notice, of any kind" to exercise "all those rights and remedies provided in [the Loan Agreements] . . . and the other Transaction Documents," including Plaintiffs' right to enforce Defendant's Guaranty of payment of up to $4.5 million in principal plus costs and attorneys' fees, *see* Dkt. 61-1 at § 9.1(a); but instead the parties executed the SFFA, pursuant to which Plaintiffs agreed to "accept the [Policies] from the [Borrowers] in partial satisfaction of the Obligations . . . but excluding that portion of the Obligations consisting of the unpaid principal amount of $3,500,000.**"** Dkt. 61-6 at § 7. And they agree that Plaintiffs have strictly foreclosed on the Policies, and that Borrowers and Defendant have not paid Plaintiffs any additional sum.

Accordingly, under the plain language of the SFFA, Plaintiffs accepted the Policies in "partial satisfaction" of the debt, specifically "excluding . . . the unpaid principal amount of $3,500,000", for which Defendant accepted liability. *See* Dkt. 61-6 at §§ 7 & 8. Therefore, the debt was only partially satisfied, and Defendant is liable for the remaining debt in the amount of $3,500,000.

Defendant makes a number of unpersuasive arguments as to why the language in the SFFA and Guaranty is ambiguous or otherwise warrants another interpretation. First, at issue is the following language in the SFFA: "the Lender Parties *propose* . . . to accept the Subject Collateral from the Obligors in *partial satisfaction* of the Obligations . . . But excluding that portion of the Obligations consisting of the *unpaid principal amount of $3,500,000*." Dkt. 61-6 § 7 (emphasis added). Defendant argues that the phrase "unpaid principal amount" indicates that Defendant is liable only if there is an unpaid portion of the principle, which requires a factual determination of the value of the Policies. This argument is incorrect because it ignores the two critical words following "unpaid principal amount." The word "unpaid" in this context unambiguously refers to the portion of the principal amount that the parties agreed remained

outstanding -- $3,500,000.  If Defendant's interpretation were accepted, the parties would have had no reason to specify the monetary amount left unpaid.  Moreover, by Defendant's interpretation, the word "partial" in the phrase "partial satisfaction" is both superfluous and potentially inaccurate, since by Defendant's interpretation, the extent of Defendant's remaining obligation, if any, after foreclosure on the Policies depends on a later determination of their value.  Defendant's interpretation is contrary to ordinary principles of contract construction, which must give "fair meaning to all of the language employed by the parties," *Yarom*, 60 N.Y.S.3d at 285 (2d Dep't 2017), and "leav[e] no provision without force and effect." *Fed. Ins. Co. v. IBM*, 965 N.E.2d 934, 936 (N.Y. 2012).

Defendant also argues that this section in the Loan Agreement fails to bind the parties because it begins with the phrase "[Plaintiffs] propose."  This argument is also incorrect; it disregards the strict foreclosure requirements of New York law, which expressly contemplate that the secured party send the debtor a "proposal" to retain the collateral in partial satisfaction of a debt, to which the debtor must agree.  *See* NY UCC 9-620 and Comment 3, UCC 9-620.  Contrary to Defendant's argument that the language is somehow non-binding surplusage, the language is essential to bind the parties to their partial foreclosure agreement embodied in the SFFA.

Third, Defendant argues that the SFFA is subordinate to the Guaranty pursuant to the SFFA's provision that "upon the effectiveness of the Strict Foreclosure . . . [Defendant] shall be liable, pursuant to the [] Guaranty, for that portion of the Obligations consisting of the unpaid principal amount of $3,500,000."  Dkt. 61-6 at § 8.  Per Defendant's argument, this is significant because the Guaranty terminates upon full payment of the Obligations, which Defendant suggests may have occurred with foreclosure of the Policies (raising an issue of fact), and

9

regardless of any reservation of liability in the SFFA. But this argument essentially nullifies the plain language of the SFFA and renders meaningless Plaintiffs' acceptance of the Policies in partial satisfaction of the Obligations, less $3,500,000 million in unpaid principle. Defendant's interpretation "strains the contract language beyond its reasonable and ordinary meaning." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 598 (2d Cir.2005). The more natural interpretation of the phrase "pursuant to the [] Guaranty" is that Defendant's liability springs from the Guaranty, as further defined and circumscribed by the SFFA.

Fourth, Defendant argues that, because the "Purchase Option," pursuant to which the Borrowers could buy back the Policies and make Plaintiffs whole, specifies the price of the Policies as roughly the sum of the three unpaid principal loans, *see* Dkt. 61-6 at § 9(v), this demonstrates that the Policies should be valued as the full amount of the Obligation owed and Plaintiffs were therefore made whole by foreclosing on the Policies. This argument is circular. That the SFFA permits the Borrowers to repay the full debt owed, plus interest and costs, in return for which they receive their collateral, does not indicate that the SFFA valued the collateral at the value of the full debt owed. Indeed, such an interpretation would make large portions of SFFA superfluous; if the parties had intended to agree that Plaintiffs' foreclosure of the Policies was sufficient to repay the Obligation in full, they would not have needed to agree on a forbearance period following their foreclosure on the Policies, *see* Dkt. 61-6 at § 10, nor would they have explicitly excluded $3,500,00 from the definition of "Satisfied Obligations," *see* Dkt. 61-6 at § 7. "It is a cardinal rule of construction that a court should not 'adopt an interpretation' which will operate to leave a provision of a contract . . . without force and effect." *Sparta Commercial Servs., Inc. v. DZ Bank AG Deutsche Zentral-Genossenschaftsbank*, 160 F. Supp. 3d 580, 584 (S.D.N.Y. 2015), *aff'd sub nom. Sparta Commercial Servs., Inc. v. DZ Bank*,

10

680 F. App'x 17 (2d Cir. 2017) (quoting *Corhill Corp. v. S.D. Plants, Inc.*, 176 N.E.2d 37, 38 (N.Y. 1961)). Plaintiff's motion for summary judgment as to liability is granted.[1]

B. **Damages**

As the SFFA unambiguously specifies the monetary value of the unpaid principle remaining as $3,500,000, Defendant is liable to Plaintiffs for $3,500,000 under the unambiguous language of the SFFA. *See* Dkt. 61-6 at § 8 (Defendant "shall be liable, pursuant to the [] Guaranty, for that portion of the Obligations consisting of the unpaid principal amount of $3,500,000.").

Plaintiffs also seek summary judgment as to Plaintiffs' claim for reasonable costs and fees associated with enforcing the Guaranty, including attorneys' fees. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *accord Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (summary order) (construing New York law). "[C]ourts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (quotation marks omitted); *accord Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1186 (N.Y. 2018).

---

[1] Defendant's evidence regarding the SFFA drafting process and the intentions of the parties are not appropriately considered in interpreting an unambiguous contract. *See Yarom v. Poliform S.P.A.*, 60 N.Y.S.3d 283, 285 (2d Dep't 2017) ("If the language [in a contract] is free from ambiguity, its meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence.")

Here, the SFFA includes clear language in two separate sections providing for an award of reasonable costs, including attorneys' fees, incurred by Plaintiffs in enforcing their rights under the SFFA: (1) Defendant "agrees to pay any and all reasonable costs, fees and expenses incurred by any [Plaintiff] (including any fees, charges and disbursements of any counsel for such [Plaintiff]) in any way related to the enforcement or protection of such [Plaintiff's] rights hereunder," Dkt. 61-3 at § 1.1; and (2) Defendant "shall pay to the [Plaintiffs], on demand, the amount of any and all reasonable expenses, including, without limitation, attorneys' fees, legal expenses and brokers fees, which such [Plaintiffs] may incur in connection with exercise or enforcement of any . . . rights, remedies or powers of any [Plaintiff] hereunder or with respect to any or all of the Obligations." Dkt. 61-3 at § 8.1. This language, which expressly refers to attorneys' fees incurred in connection with the enforcement of the contract, is sufficiently clear to make such an award enforceable in this action, where Plaintiffs seeks to enforce their rights under the SFFA. *See, e.g., Inter-Am. Dev. Bank v. Venti S.A.*, No. 15 Civ. 4063, 2016 WL 642381, at *4 (S.D.N.Y. Feb. 17, 2016) (awarding reasonable attorneys' fees under New York law where the at-issue guaranties expressly committed the non-moving parties to reimbursing "all out-of-pocket expenses incurred by [the moving party] in connection with enforcement, collection or any other exercise of remedies under [the] Guarantee Agreement, including attorneys' fees"); *HSH Nordbank AG New York Branch v. Swerdlow*, No. 08 Civ. 6131, 2010 WL 1141145, at *5 (S.D.N.Y. Mar. 24, 2010), *aff'd sub nom. HSH Nordbank AG New York Branch v. St.*, 421 F. App'x 70 (2d Cir. 2011) (awarding reasonable attorneys' fees under New York law to the moving party where the at-issue guaranties provided that the defendants shall be liable for "any and all expenses (including reasonable counsel fees and expenses) incurred by [the moving party] in enforcing any rights under [the Guaranties]"). Accordingly, Plaintiffs are

granted summary judgment as to Defendant's liability for both the $3,500,000 in unpaid principal, and Plaintiffs' reasonable costs and fees, to be determined at a later date.

### C. Counterclaims and Affirmative Defenses

Defendant asserts thirteen affirmative defenses and one counterclaim, each of which fails as a matter of law and is therefore not an impediment to summary judgment for Plaintiffs. As an initial matter, Defendant's defenses as to the deficiencies in Plaintiffs' pleading (Defenses 1, 13) were addressed in the Court's Order dismissing the unjust enrichment claim and denying dismissal of the contract claim. Defendant is also estopped, per the Court's April 15 Order, from challenging the Guaranty's validity (Defenses 7, 8).

Defendant's other affirmative defenses, and his counterclaim, fail on the merits. Four defenses (Defenses 3, 4, 5, 6) rest on the underlying argument that Plaintiffs have not suffered damages because the value of the Policies is equal to or exceeds the value of the obligations owed and, since Plaintiffs foreclosed on the Policies, Plaintiffs are not entitled to any additional damages.[2] Similarly, Defendant's counterclaim requests that the Court declare the Guaranty null, void and unenforceable, and that the shares of VIA Motors stock be returned to Defendant, on the grounds that Plaintiffs' foreclosure of the Policies satisfied all damages. These affirmative defenses are rejected, and the counterclaim is dismissed, for the reasons detailed above. Defendant provides no legal authority permitting a court to disregard the parties'

---

[2] These defenses are: Plaintiffs have not been damaged or experienced any damages as a result of any breach of the Loan Agreements, Notes, or the Guaranty (or any other loan document executed between the parties); Plaintiffs are not entitled to make a claim on the Guaranty unless they have suffered a loss and/or damages, and because they have not suffered a loss/and or damages, their claims fail in this case; Plaintiffs are not entitled to a windfall or double damages, and thus may not recover under the Guaranty; Plaintiffs were made whole by virtue of them foreclosing on/taking back the collateral; and Plaintiffs' claims may be barred by the doctrines of setoff and/or payment in full.

contractual agreement and unilaterally determine the value of the Policies, but rather cites to inapposite caselaw precluding damages and indemnification beyond that to which parties contractually agree. *See, e.g., Mitsui & Co. (USA) Inc. v. Hudson Tank Terminals Corp.*, 790 F.2d 226, 232 (2d Cir. 1986) (where bailee damaged goods, the court held that buyer's right of recovery against bailee for the damage was extinguished by seller's recovery from bailee for the damage); *Noble by Noble v. Ambrosio*, 574 N.Y.S.2d 234, 240 (Sup. Ct. 1990), *aff'd in part sub nom. Noble v. Ambrosio*, 572 N.Y.S.2d 632 (2d Dep't 1991) (holding, in relation to indemnification clauses, that a plaintiff may not receive a double recovery); *1633 Assocs. v. Uris Bldgs. Corp.*, 414 N.Y.S.2d 125, 128 (1st Dep't 1979) (declining to permit recovery under a guaranty of completion that would put plaintiff in a position to be better off than if the contract had been performed).

Defendant did not respond to Plaintiffs' arguments seeking rejection of four affirmative defenses (Defenses 2, 9, 10, 11) that appear to relate to the theory that Plaintiffs were obligated to dispose of or return the VIA Motors International, Inc. stock, provided as collateral by Defendant to Plaintiffs, prior to bringing the action, beyond reiterating his arguments that the Policies made Plaintiffs whole.[3] Therefore, they are deemed abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."). These defenses also fail on the merits. Plaintiffs were not

---

[3] These defenses are: Plaintiffs failed to mitigate their damages; Plaintiffs' claims may be barred because there was a condition precedent related to the collateral which Plaintiffs failed to perform; Plaintiffs' claims may be barred based on their election of remedies – to wit, their decision to take and hold the collateral in question; and Plaintiffs' claims may be barred because Plaintiffs have unjustifiably impaired the collateral in question, have failed to exhaust/liquidate the collateral in question, and/or have failed to dispose of the collateral in a commercially reasonable manner.

required to dispose of any collateral before bringing this action. The Guaranty states that "[Defendant] agrees that [Plaintiffs] need not attempt to . . . realize upon any collateral to enforce the obligations hereunder" Dkt. 61-3 at § 2, and "Defendant hereby irrevocably waives any defenses it may now or hereafter have in any way relating to any or all of the following:" "any requirement that any [Plaintiff] exhausts any right to take any action against . . . any Collateral." Dkt. 61-3 at § 2.4. Plaintiffs are also permitted to bring this action under the UCC prior to disposing of any collateral; under the UCC, after default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." N.Y. U.C.C. Law § 9-601(a)(1). These rights "are cumulative and may be exercised simultaneously." N.Y. U.C.C. Law § 9-601(c); *accord Bank of Am., N.A. v. Jacobi Tool & Die M.F.G., Inc.*, No. 17 Civ. 6828, 2019 WL 3553796, at *6 (E.D.N.Y. Aug. 5, 2019); *Texas 1845 LLC v. Wu Air Corp.*, No. 11 Civ. 1825, 2012 WL 382828, at *7 (E.D.N.Y. Feb. 6, 2012) (striking the affirmative defense of election of remedies because a secured party's remedies against a defaulting debtor are generally cumulative under New York law). Plaintiffs may seek a judgment as to Defendant's liability and damages, and then exercise whatever options are available, including disposing of any collateral, to collect on the judgment.[4]

Finally, Defendant asserts "the equitable defenses of waiver, estoppel, laches, and/or unclean hands" (Defense 12). Defendant cites no evidence and makes no arguments to support these equitable defenses. They have been abandoned, *Jackson*, 766 F.3d at 198, and are rejected. "[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co. v. Calmare Therapeutics*

---

[4] Nothing in this order shall be read to permit Plaintiffs to dispose of the stock except to collect on the judgment.

*Inc.*, 918 F.3d 92, 98 (2d Cir. 2019). The affirmative defenses are stricken, and Defendant's counterclaim is dismissed.

V.  **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. Plaintiffs are awarded judgment against Defendant in the amount of $3,500,000 plus interest and reasonable costs, including reasonable attorneys' fees. The request for oral argument is denied as moot.

The Clerk of Court is directed to close the motion at Docket No. 58

Dated:  February 4, 2020
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**